E-FILED
Thursday, 17 January, 2019 02:51:11 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LAMONTE DIXON, JR.,<br>    Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES,<br>INC. and DR. SCOTT McCORMICK,<br>    Defendants. | Case No. 1:16-cv-01458-JEH |

**Order and Opinion**
**I**
**A**

The Plaintiff, Lamonte Dixon, Jr. ("Dixon") filed a *pro se* Complaint against the Defendants, Wexford Health Sources, Inc. ("Wexford") and Dr. Scott McCormick ("Dr. McCormick"), making claims against them related to medical care he received while an inmate in the Illinois Department of Corrections. (D. 1)[1]. Pursuant to the Court's Merit Review Opinion, 28 U.S.C. § 1915A, the Court allowed Dixon to proceed on his Eighth Amendment claims against defendant Dr. McCormick and Wexford for deliberate indifference to a serious medical need, and a Fourteenth Amendment Due Process Claim against defendant Dr. McCormick. (D. 8 at ECF p. 2). Specifically, Dixon claims that: (1) Wexford was deliberately indifferent to a serious medical need by failing to have a policy which requires its employees to inform patients of the side-effects of prescribed medications; (2) Dr. McCormick was deliberately indifferent to a serious medical need by failing to inform Dixon of Risperdal's potential side-effect of gynecomastia; and (3) Dr. McCormick violated Dixon's Fourteenth Amendment substantive due process

---
[1] Citations to items on the docket in this case are abbreviated as "D. __ at ECF p. __."

1

right to informed consent and to refuse treatment due to Dr. McCormick's failure to warn of Risperdal's side effects.

The Court granted Dixon's request for recruited counsel. (Minute entry, 6/23/2017). After the conclusion of discovery, the Defendants filed a motion for summary judgment, seeking judgment in their favor on all claims. Pending is the Defendants' motion for summary judgment (D. 44). For the reasons stated, *infra*, the motion is granted.[2]

**B**

The parties do no dispute the following facts. Dixon began taking Risperdal, an antipsychotic medication, when he was very young. In April 2004, when Dixon was twenty years old, he entered the Illinois Department of Corrections. He continued to take Risperdal in prison from at least 2004 until 2011, which had been prescribed to him by various prison doctors.

Dr. McCormick, a Board Certified Psychiatrist employed by Wexford, had professional contact with Dixon from November 14, 2012 to June 1, 2016. When Dr. McCormick first saw Dixon in November of 2012, he reported that he had not taken Risperdal or any other antipsychotic medications in a couple of years, although he was taking Prozac. At Dixon's next visit with Dr. McCormick on February 13, 2013, Dixon reported he was doing well and expressed a preference to take no prescribed medication. However, on September 16, 2013, Dixon reported to Dr. McCormick that he was experiencing psychotic symptoms, and he asked to be placed back on Risperdal. Because Dr. McCormick did not believe Dixon was suffering from a psychotic disorder at that time, Dr. McCormick declined to prescribe Risperdal, but discontinued the Prozac prescription because Dr. McCormick believed Dixon's reported symptoms could be a negative reaction

---

[2] The parties consented to a magistrate judge presiding over all matters. (D. 18 & 23).

to that medication. At subsequent visits on October 21 and November 19, 2013, Dr. McCormick continued to prescribe no medication for Dixon.

In January of 2015, Dr. McCormick, accepted a position as Regional Psychiatrist and no longer regularly saw patients. Thus, on October 28, 2015, a different doctor, Dr. Gvozdjan, prescribed Dixon Prozac and Haldol—an antipsychotic medication, which he thereafter substituted with Risperdal on December 7, 2015.

Then, on March 9, 2016, Dr. McCormick, while filling in for another psychiatrist, saw Dixon again. Dr. McCormick did not diagnose Dixon as suffering from a psychotic disorder on March 9, 2016. On that date and with Dixon's consent, Dr. McCormick reduced Dixon's dose of Risperdal from 2mg to 1mg per day. Dr. McCormick saw Dixon again on June 1, 2016, at which time he continued the Risperdal prescription at 1 mg per day.

A potential side effect of Risperdal is gynecomastia, which causes increased breast tissue. Dixon experienced enlargement of his breasts, there being a rumor among inmates as early as 2007 that Dixon was taking hormones to enlarge his breasts. Dixon experienced this enlargement prior to ever seeing Dr. McCormick.

The parties dispute whether Dr. McCormick ever informed Dixon of the risk of developing gynecomastia as a side-effect of Risperdal and whether Wexford failed to have a policy of requiring employees to inform patients of the side effects of prescribed medications.

## II
### A

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. "Summary judgment is appropriate only in circumstances where 'the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party.'" *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 704 (7th Cir. 1993). The Court should "construe all facts and reasonable inferences from the record in a light most favorable to the nonmoving party." *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005).

B

Wexford, a private corporation, argues that it can be held liable for an Eighth Amendment violation claim made pursuant to 42 U.S.C. § 1983 only if the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself; there is no *respondeat superior* liability for employers in § 1983 actions. Wexford also argues that Dixon has no evidence to demonstrate a deliberate decision by Wexford policymakers to promulgate no policy or to show an awareness of harm by those policymakers that the failure to promulgate such a policy created a substantial risk of serious harm. Dixon acknowledges that no *respondeat superior* liability exists for a private corporation in a § 1983 action but argues that Wexford's failure to establish a policy regarding informing inmates of medication side-effects is established by the fact that for Dixon's years in custody, "not one mental health provider informed him of the side effects of Risperdal." (D. 46 at ECF p. 23). He also notes an inmate in another case made a similar claim regarding this lack of a policy. *Williams v. Kelly*, 2018 WL 1911820 (N.D. Ill., Apr. 23, 2018), *appeal dismissed*, 2018 WL 6879709 (7th Cir. Sept. 28, 2018).

Wexford is correct that a private corporation "cannot be held liable under §1983 unless the constitutional violation was caused by an unconstitutional policy

4

or custom of the corporation itself." *Shields v. Ill. Dep't. of Corr.*, 744 F.3d 782, 746 (7th Cir. 2014). "*Respondeat superior* liability does not apply to private corporations under §1983." *Id*. The Court is bound to follow this precedent.

On the policy question, the only evidence to which Dixon points in support of his claim is the fact that none of his health care providers ever informed him of Risperdal's side-effects while he was in the custody of the Illinois Department of Corrections. However, as Wexford notes, with the exception of Dr. McCormick, there is no evidence in the record to establish which, if any, of Dixon's other health care providers worked for Wexford. Thus, the Court cannot infer anything related to Wexford from their actions, much less the existence or lack of any policy on Wexford's part. Second, as Wexford also points out, Dixon failed to identify any witnesses who could testify to the alleged deliberate indifference of Wexford policymakers. He identified only himself and Dr. McCormick as witnesses. The only documents Dixon identified in support of his claims against Wexford are his medical and grievance records. He never deposed Dr. McCormick or posed interrogatories to him. Although Dixon asked Wexford to produce policies relating to the treatment of gynecomastia, he never sought information about any policies relating to the treatment of psychosis, the use of Risperdal, or warning of the side effects of medication.

Finally, *Williams* serves only to demonstrate why summary judgment in Wexford's favor is appropriate. Like Dixon, the plaintiff in *Williams* alleged that several of his health care providers failed to advise him of the risk of developing gynecomastia when taking Risperdal. He cited this fact in support of his *Monell* claim "based on Wexford's lack of policy warning inmates about the potential side effects of medications." *Williams*, at *6. Faced with the identical argument Dixon makes here, the court stated:

> The duty to warn a patient of a prescription drug's side effects—standing alone—is a physician's professional duty under Illinois law. *See Xeniotis v. Cynthia Satko, D.D.S.*, 14 N.E.3d 1207, 1213 (1st Dist. 2014) ("In a malpractice action based on the doctrine of informed consent, the plaintiff must" show that "the physician had a duty to disclose material risks."); *McDonald v. Lipov,* 13 N.E.3d 179, 187 (2d Dist. 2014) ("It is well established that a claim that a health professional acted without the informed consent of the patient is a type of medical malpractice claim."). Thus, under the circumstances—and construing the evidence in Williams' favor—that Wexford has gaps in its policies regarding warning inmates about medications' potential side effects does not implicate any constitutional deprivation.

*Williams*, at *6. The court granted summary judgment in favor of Wexford.

This Court reaches the same result here. Dixon has simply failed to present any evidence which would allow this Court to reasonably infer that Wexford failed to establish a policy requiring inmates be warned about potential side-effects. Nor did Dixon present any evidence on why such a policy would even be necessary given a physician's independent duty under Illinois law to provide such a warning. *Id.* Accordingly, Wexford is entitled to summary judgment.

C

Both Dixon's Eighth and Fourteenth Amendments claims fail because, even assuming constitutional violations, Dixon failed to present evidence that such violations are a proximate cause of his alleged gynecomastia or other injuries. "Liability under §1983 requires evidence that the injury 'ha[s] a causal connection with the alleged [constitutional] violation.'" *Bradley v. Sheriff of Rock Island Cnty*, 2016 WL 9775233 at *4 (C.D. Ill., Mar. 2, 2016), *quoting Berman v. Young,* 291 F.3d 976, 982 (7th Cir. 2002). Although ordinarily proximate cause is a question to be decided by a jury, summary judgment is appropriate in the rare case that a plaintiff can proffer no evidence that a constitutional injury created or exacerbated his

injury. *See Id.*, *quoting Gayton v. McCoy,* 593 F.3d 610, 624 (7th Cir. 2010). This is one of those rare cases.

There are no experts in this case. Dixon is the only deposed witness. There is no information regarding the connection between gynecomastia and Risperdal, other than the fact that the parties agree it is a potential side effect of the drug. Dixon was on Risperdal for many years before ever seeing Dr. McCormick and had symptoms of gynecomastia before seeing Dr. McCormick—at least as early as 2007. When Dr. McCormick first saw Dixon on November 14, 2012, he did not put Dixon back on Risperdal; rather, a different doctor placed him back on it on December 7, 2015. Three months later, on March 9, 2016, Dr. McCormick reduced Dixon's Risperdal dose, maintained that reduced dose on June 1, 2016, and, as far as the record is concerned, never treated Dixon again. On June 25, 2016, a different doctor took Dixon off Risperdal.

Given these facts, Dr. McCormick's relevant role in this case is limited to reducing Dixon's Risperdal dose and maintaining it at that level for less than four months. Even assuming Dr. McCormick failed to warn Dixon of Risperdal's side effects, there is nothing in the record to demonstrate that such a failure is a proximate cause of Dixon's injuries. There is no evidence in the record that reducing a Risperdal dose can cause gynecomastia or make it go away. There is no evidence that stopping Risperdal after gynecomastia develops will improve or make the condition go away. There is no evidence that gynecomastia can develop as a side effect to a 1 mg dose of Risperdal. There is no evidence that gynecomastia can develop after using it at a 1 mg dose for less than four months. There is no evidence that stopping Risperdal after gynecomastia develops will improve or make the condition go away. There is no evidence that reducing a Risperdal dose from 2 mg per day to 1 mg day for four months before stopping it would have a different effect on gynecomastia than terminating the drug immediately.

In other words, Dixon needed to present some evidence which provides information related to Risperdal, its usage, its dosage, and gynecomastia. When attempting to state a claim based upon a failure to warn, the Plaintiff is obliged to present some evidence that such a failure is a proximate cause of his injuries. Dixon simply does not have any evidence to establish that link. Dixon needed some type of expert evidence to establish it. The Court does not know why Dixon did not, or could not, present expert evidence to establish proximate cause. Perhaps his experienced, recruited counsel (himself a medical doctor) had good reasons for not doing so, including the possibility that he was unable to find an expert witness who would provide a helpful opinion. Ultimately, it is not appropriate for the Court to speculate about the reasons for why the evidence is absent; this Court must make its decision based upon the evidence presented to it. *Contrast Rowe v. Gibson*, 798 F.3d 622, 630 (7th Cir. 2015) (holding the district court should have considered appointing a *pro se* plaintiff an expert).

This is not a case where Dr. McCormick placed Dixon on Risperdal for the first time in his life, and he developed gynecomastia thereafter. In that scenario, even without the evidence missing here, one might be able to reasonably infer that Dr. McCormick's actions and the gynecomastia are linked, at least to the extent that the case could survive summary judgment on the proximate cause issue. In this case, however, Dixon's own deposition testimony demonstrates that he was on Risperdal for years and had enlarged breasts long before Dr. McCormick ever saw him. Under this circumstance, Dixon needed to present some evidence of how Dr. McCormick's failure to warn him of Risperdal's side-effects at the March or June appointments are connected to his alleged injuries. He has presented nothing to make that connection.

Therefore, Dr. McCormick is entitled to summary judgment on both the Eighth and Fourteenth Amendments claims.

## III

For the reasons stated, *supra*, the Defendant's motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of the Defendants. This case is terminated.

*It is so ordered.*

Entered: January 17, 2019

s/Jonathan E. Hawley
U.S. Magistrate Judge